159 Wis.2d 754 (1990)
465 N.W.2d 520
IN the INTEREST OF J.W.T., a Person Under the Age of 18: J.W.T., Appellant,
v.
STATE of Wisconsin, Respondent.
No. 90-2042-FT.
Court of Appeals of Wisconsin.
Submitted on briefs November 27, 1990.
Decided December 18, 1990.
*756 On behalf of the appellant, the cause was submitted on the briefs of Ruth S. Downs, assistant state public defender.
On behalf of the respondent, the cause was submitted on the brief of James D. Babbitt, assistant district attorney.
Before Cane, P.J., LaRocque and Myse, JJ.[1]
CANE, P.J.
J.W.T. appeals a dispositional order adjudicating him delinquent for his participation in the crime of taking and driving a motor vehicle without the consent of the owner.[2] J.W.T. contends that the delinquency petition should have been dismissed because the *757 intake worker did not refer the case to the district attorney within the forty-day deadline mandated by sec. 48.24(5), Stats. Because the intake worker did refer the case within forty days from the time she had sufficient information to determine that J.W.T. should be referred to the court as a delinquent, the trial court's order is affirmed.
J.W.T., a minor, was on informal supervision to Barron County Juvenile Court intake worker Barbara Jansen before any information was received in the present case. On September 20, 1989, Jansen received a telephone call from J.W.T.'s high school principal. The principal told her that he had heard from the Rice Lake Police Department that J.W.T. had been involved in a car theft and was being held in detention in Duluth, Minnesota. He also said that the Rice Lake Police Department told him they had already informed Jansen of the detention. In fact, Jansen had not received any such communication from the Rice Lake Police Department.
The next day, Jansen called the Rice Lake Police Department and the Barron County Sheriff's Department, but neither law enforcement agency had a record of the incident. On the same day, Jansen called the boy's mother. They spoke briefly, and the mother confirmed that he had been detained in Duluth. Jansen arranged a conference with the mother for the following week, September 26. At the conference, the mother again confirmed that the boy had been detained in Duluth.[3]
*758 Jansen received a report that the boy had beaten his mother, and Jansen again met with the mother on October 11. Jansen indicated that at the meeting the two spoke briefly of the Duluth incident, and Jansen said "I was still waiting for information on that, because I felt it was important that something happen here." (Emphasis added.)
On October 13, Jansen contacted the St. Louis County Sheriff's Department in Duluth to ask for a report of the incident. She was told to contact the Duluth juvenile detention center and the Duluth Police Department for further information. She made those contacts and also contacted the Rice Lake office of probation and parole.[4]
*759 Jansen made two more telephone calls on October 25 to Rice Lake and to St. Louis County in an attempt to gain further information. On November 1, she repeatedly called the St. Louis County district attorney's office and left messages with the county attorney's secretary for further information. On November 3, she called an attorney who was either corporate counsel or county attorney, and he said "he would send the information in that day's mail." Finally, Jansen received a police report detailing the incident on November 6.
Jansen testified that at some point prior to receiving the police report on November 6:
Just from verbal information, I believed that [J.], along with another accomplice, had taken a motor vehicle, driven it without the owner's consent, were apprehended by Duluth police, held in detention, and that some time during that period of time, the parent was informed and J. was released to her when she came to pick him up in Duluth.
She further testified, however, that she did not know the type of vehicle that had been stolen, the owner of the vehicle, the particular location in Duluth from which it was stolen, the specific location in Duluth where the boy was apprehended, the names of the officers who apprehended *760 him or whether either the boy or his accomplice had made a confession to the police.
The trial court ruled that Jansen received the referral information triggering the forty-day time limit on November 6. Jansen referred the matter to the district attorney on December 15, thirty-nine days later.
[1]
The parties agree that the forty-day time limit imposed by sec. 48.24(5), Stats.,[5] is triggered when the juvenile intake worker receives "information indicating that a child should be referred to the court as delinquent." Section 48.24(1), Stats.[6] A "delinquent" is defined in sec. 48.02(3m), Stats.,[7] as a child "who has violated any state or federal criminal law." This court is asked to construe the meaning of the term "information indicating that a child should be referred to the court as delinquent." The construction of a statute is a question *761 of law we review de novo. In re J.L.W., 143 Wis.2d 126, 128, 420 N.W.2d 398, 399 (Ct. App. 1988).
[2-6]
The purpose of statutory construction is to ascertain and give effect to the legislature's intent. In re P.A.K., 119 Wis.2d 871, 878, 350 N.W.2d 677, 681 (1984). To determine that intent, the reviewing court first looks to the language of the statute itself. Id. If the statute is clear on its face, the inquiry ends. Id. Only if it is ambiguous will there be an examination of extrinsic sources of legislative intent. Id. A statute is ambiguous if it is capable of being understood by reasonably wellinformed persons in more than one way. Id. at 878-79, 350 N.W.2d at 682.
The term "information indicating that a child should be referred to the court as delinquent" is ambiguous in that it can be understood in at least three ways. As the state contends, it may mean a written, fully-investigated case report from a police agency. As J.W.T. urges, it may mean any information from whatever source that a child has committed a crime. Finally, it could be understood to mean that quantum of information concerning a child's commission of a crime that would enable a juvenile intake worker to begin to evaluate the appropriate disposition of the case.
[7-9]
We note at the outset that it is not the task of a juvenile intake worker to investigate the juvenile's alleged crime.[8] Rather, the juvenile intake worker is *762 charged with recommending that "a petition be filed, enter into an informal disposition or close the case" within forty days of the receipt of the referral information. Section 48.24(5), Stats. This recommendation is made in light of the best interests of the juvenile and of the public with respect to any action to be taken in the case. Section 48.24(1), Stats.
To interpret the language "information indicating that a child should be referred to the court as delinquent" as the state urges, to require a written, fully-investigated case report from a police agency would serve to confuse the roles of the juvenile intake worker and the district attorney's office. It is the district attorney who makes the decision to file a petition, close the case or refer the matter back to intake with a decision not to file a petition or a request for further investigation. Section 48.25(2)(a), Stats. The juvenile intake worker need not determine that a petition could actually be filed in the matter prior to initiating the inquiry into the appropriate disposition of the case.
On the other hand, to interpret the language as J.W.T. argues so as to encompass any information that a child has committed a crime would deprive the juvenile intake worker of the information necessary to begin the required evaluation. Without knowledge of the seriousness of the alleged crime and the extent of the juvenile's participation in it, the intake worker could not begin an informed inquiry to determine whether the case should be dealt with on the basis of an informal disposition or whether a petition should be filed.
*763 [10]
We conclude that the language "information indicating that a child should be referred to the court as delinquent" means that quantum of information concerning a child's commission of a crime that would enable a reasonable juvenile intake worker to evaluate the appropriate disposition of the case. This best comports with the legislature's intent in designing this system of prescreening juvenile cases. In this case, Jansen could not begin an evaluation of the appropriate disposition until she knew the extent of the boy's involvement in the alleged crime. For example, without at least speaking on the telephone to the arresting officers or some other member of the appropriate law enforcement agency with knowledge of the arrest, she could not determine how actively the boy participated with his adult accomplice in stealing the car. Here, Jansen made reasonable efforts to obtain this information after being informed of the detention.
[11]
While we reject a bright-line requirement that a juvenile intake worker receive a police report prior to triggering the forty-day requirement for referral to the district attorney, in this case Jansen did not receive the necessary information until she received that report. Repeated attempts at telephone contact with the various law enforcement agencies involved were not fruitful. Under these conditions, Jansen received the necessary referral. information on November 6 and referred the case to the district attorney's office within the forty-day limitation period.
By the Court.Order affirmed.
NOTES
[1] Upon the chief judge's order, this has been issued as a threejudge opinion pursuant to sec. 809.41(3), Stats.
[2] This is an expedited appeal under Rule 809.17, Stats.
[3] The record of Jansen's cross-examination at the hearing on the dispositional order does not detail the substance of their conversation during the initial phone call, this meeting, or their subsequent meeting, as J.W.T.'s counsel limited his questions to generalizations. As an example:

Q. Going back to the conference with the mother on September 26th, did you talk about the Duluth matter at that time face-to-face?
A. Yes, because that was part of the basis for the conference.
Q. And did she against confirm that it took place?
A. Yes.
Q. After October 10, what was your next contact with the matter?
. . . .
A. With Officer Marcon on the 11th of October.
[4] Again, the substance of Jansen's conversations with the listed law enforcement agencies was not probed on cross-examination. The record indicates only that she made contact with those departments and does not disclose what she learned during her conversations. J.W.T. argues that the following exchange demonstrates that Jansen had knowledge of all the events surrounding the Duluth detention prior to her telephone call to the St. Louis County Sheriff's Department on October 13:

Q. What was your next contact?
A. On the 13th of October with the Duluth Sheriffs Department at St. Louis County, to ask for the report.
Q. And at that time, you knew what had gone on, but you just wanted those people to send you a report?
A. Yes.
We reject J.W.T.'s contention that Jansen's testimony was a concession that she possessed all relevant information on October 13. J.W.T.'s counsel made the characterization that she "knew what had gone on." Jansen's one word response to the compound question counsel propounded does not in the view of this court amount to an adoption of counsel's characterization. At no point did counsel explore the specifics of the information received.
[5] Section 48.24(5) provides in part:

The intake worker shall recommend that a petition be filed, enter into an informal disposition or close the case within 40 days or sooner of receipt of referral information.... The judge shall dismiss with prejudice any such petition which is not referred or filed within the time limits specified within this subsection.
[6] Section 48.24(1) provides:

Except where a citation has been issued under s. 48.17(2), information indicating that a child should be referred to the court as delinquent, in need of protection or services or in violation of a civil law or a county, town or municipal ordinance shall be referred to the intake worker, who shall conduct an intake inquiry on behalf of the court to determine whether the available facts establish prima facie jurisdiction and to determine the best interests of the child and of the public with regard to any action to be taken.
[7] Section 48.02(3m) provides: " `Delinquent' means a child who is less than 18 years of age and 12 years of age or older who has violated any state or federal criminal law, except as provided in ss. 48.17 and 48.18."
[8] The language of sec. 48.25(2)(a), Stats., makes this distinction clear. That section provides that the district attorney can refer back to intake under two conditions: if the district attorney decides not to file a petition or determines that further investigation is necessary:

If the case is referred back to intake upon a decision not to file a petition, the intake worker shall close the case or enter into an informal disposition within 20 days. If the case is referred back to intake for further investigation, the appropriate agency or person shall complete the investigation within 20 days. (Emphasis added.)